# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| LINDA ARMSTRONG, | ) | |
| | ) | |
| Petitioner, | ) | Case No. CV 06-00399-E-LMB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM DECISION** |
| | ) | **AND ORDER** |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

     Currently pending before the Court is Linda Armstrong's Petition for Review, seeking review of Respondent's decision to deny her application for disability insurance benefits.  The action is brought pursuant to 42 U.S.C. § 405(g).  Having carefully reviewed the record, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I.

## ADMINISTRATIVE PROCEEDINGS

     On July 6, 2004, Linda J. Armstrong ("Petitioner") applied for Disability Insurance Benefits, alleging disability since June 20, 2004.  (AR 55).  Petitioner's application was denied on October 4, 2004.  (AR 45).  Following reconsideration, Petitioner's application was again denied on January 20, 2005.  (AR 38).  On January 25, 2005, Petitioner requested a hearing before an Administrative Law Judge ("ALJ").  (AR 36).  ALJ Gilbert Alejandro Martinez held a hearing on February 9, 2006 at which time Petitioner, represented by attorney Thomas W. Clark,

**MEMORANDUM DECISION AND ORDER - 1**

appeared and testified.  (AR 22).  Also appearing and testifying were Kristy Farnsworth, Ph.D.,

an ALJ-appointed medical expert, Richard G. Taylor, an ALJ-appointed vocational expert, and

Dennis Armstrong, Petitioner's husband.  (AR 13).

On May 3, 2006, the ALJ issued a decision denying Petitioner's claim.  (AR 11).

Specifically, the ALJ found that Petitioner has not been under a disability within the meaning of

the Social Security Act.  (AR 13).  Petitioner timely requested review by the Appeals Council on

June 20, 2006.  (AR 9).  On August 9, 2006, the Appeals Council denied Petitioner's Request for

Review of Hearing Decision/Order (AR 4), making the ALJ's decision the final decision of the

Commissioner of Social Security.

Having exhausted her administrative remedies, Petitioner timely filed this instant action.

Petitioner argues that the ALJ erred by failing to provide specific, legitimate reasons for

rejecting her testimony and the opinions of her treating physicians and other medical providers.

Pet.'s Brief in Supp. of Pet. for Review, p. 5 (Docket No. 15).  Petitioner requests that the Court

order the payment of benefits or, alternatively, remand the action for proper consideration of the

treating source opinions.  *Id*.

## II.

### STANDARD OF REVIEW

It is undisputed that the burden of proof rests upon Petitioner to establish an entitlement to

disability benefits.  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  In evaluating the

evidence at an administrative hearing, the ALJ must follow a five part sequential process.  20

C.F.R. §§ 404.1520, 416.920 (2005).  The second part of that process involves a determination

regarding whether the claimant has a "severe impairment."  20 C.F.R. § 416.905(a) (2006).  If no

**MEMORANDUM DECISION AND ORDER - 2**

"severe" impairment is found, the claimant will be found not to be disabled.  20 C.F.R.

§§ 404.1520(c), 416.920(c).

To be upheld, the Commissioner's decision must be supported by substantial evidence

and be based on proper legal standards.  42 U.S.C. § 405(g) (2005); *Matney ex. rel. Matney v.*

*Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th

Cir. 1990).  Findings of the ALJ as to any fact, if supported by substantial evidence, are

conclusive.  42 U.S.C. § 405(g); *Vidal v. Harris*, 637 F.2d 710, 712 (9th Cir. 1981).  In other

words, if there is substantial evidence to support the ALJ's factual decisions, they must be

upheld, even when there is conflicting evidence.  *Hall v. Sec'y of Health, Educ. & Welfare*, 602

F.2d 1372, 1374 (9th Cir. 1979).

Substantial evidence is defined as such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971);

*Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human*

*Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).  The standard requires more than a scintilla but less

than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975);

*Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or

considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole

to determine whether it contains evidence that would allow a reasonable mind to accept the

conclusions of the ALJ.  *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019.

The ALJ is responsible for determining credibility and resolving conflicts in medical testimony,

*Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities*, see Vincent ex. rel.*

**MEMORANDUM DECISION AND ORDER - 3**

*Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).  Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ.  *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error.  *Matney*, 981 F.2d at 1019.  The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See Id.*  However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute."  *Smith v. Heckler*, 820 F.3d 1093, 1094 (9th Cir. 1987).  Reviewing federal courts must bear in mind that the Social Security Act is remedial and should be construed liberally and "not so as to withhold benefits in marginal cases."  *Id*. at 1095 (citation omitted).

### III.

### DISCUSSION

**A.    Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920 (1997).

The first step in the sequential process requires the ALJ to determine whether the claimant is engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(I).  If the answer is in the affirmative, disability benefits are denied.  20 C.F.R. § 404.1520(b).  In the instant action, the

**MEMORANDUM DECISION AND ORDER - 4**

ALJ concluded that Petitioner has not engaged in substantial gainful activity subsequent to the alleged date of onset of disability - June 30, 2004.  (AR 15).

The second step requires the ALJ to determine whether the claimant has a medically-severe impairment or combination of impairments.  20 C.F.R. § 404.1520(a)(4)(ii).  If the answer is in the negative, disability benefits are denied.  20 C.F.R. § 404.1520(c).  The ALJ found that Petitioner has the following severe impairments:  fibromyalgia, migraine headaches, obesity, and irritable bowel syndrome.  (AR 15-16).

The third step in the evaluation process requires the ALJ to determine whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. § 404.1520(a)(4)(iii).  If the answer is in the affirmative, the claimant is disabled and benefits are awarded.  20 C.F.R. §§ 404.1520(d), 416.920(d).  In this respect, the ALJ concluded that Petitioner's impairments do not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments.  (AR 16).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  In this respect, the ALJ concluded that Petitioner's medically determinable impairments could reasonably be expected to produce her alleged symptoms; however, the ALJ found that Petitioner's statements concerning the intensity, duration, and limiting effects of these symptoms are not entirely credible.  (AR 18).

According to the ALJ, nerve conduction studies taken nearly two months before Petitioner's onset date failed to disclose any abnormality of consequence in her upper extremities.  *Id*.  A 1997 MRI of Petitioner's lumbar spine showed "no evidence of disk

**MEMORANDUM DECISION AND ORDER - 5**

protrusions" or "spinal or foraminal stenosis." *Id*. Two days before being released from her job, Petitioner reported that she thought the aquatic exercises she was doing under the direction of a physical therapist were beneficial in decreasing her pain; yet, she stopped her treatments because she was afraid of accumulating medical bills. *Id*. The ALJ also believed that Dr. Richard Maynard was not qualified to opine on Petitioner's residual functional capacity given the apparent absence of him historically treating Petitioner for chronic pain or fibromyalgia. *Id*. Likewise, Dr. Chris Bachman's osteitis pubis diagnosis was inconsistent with Petitioner's alleged sedentary lifestyle and, therefore, not entitled to considerable weight. (AR 18-19). These factors combined to lead the ALJ to conclude that "there is no definitive diagnosis of an impairment that would prevent claimant from working at the light exertional level." (AR 19).

As a result, the ALJ found that Petitioner has the residual functional capacity to: (1) occasionally lift or carry twenty pounds and frequently lift and carry ten pounds; (2) stand or walk in two-hour increments and for a total of about six hours in an eight-hour workday; (3) sit in three-hour increments and for up to six hours in an eight-hour workday; (4) push and pull with her upper extremities without limitation (other than the weight restrictions defined above); (5) push and pull with her lower extremities on a limited basis; (6) occasionally climb stairs and ramps, ropes, scaffolds and ladders, bend, stoop, crouch, squat, kneel and crawl; and (7) perform fine and gross motor manipulations and exercise the sense of touch. (AR 17). While the ALJ acknowledged that Petitioner should avoid concentrated exposure to temperature extremes and unprotected hazards, he found that she has no visual, communicative, or mental limitations. *Id*.

Comparing Petitioner's above-referenced residual functional capacity against her fifteen-year work history as a teacher's aide, a light, semi-skilled job; a file clerk, a light, unskilled job;

**MEMORANDUM DECISION AND ORDER - 6**

and a receptionist, a sedentary, semi-skilled job, the ALJ concluded that she was able to perform her past relevant work.  (AR 19).  Because the ALJ found that Petitioner was able to perform her past relevant work despite her impairments, it was not necessary for him to demonstrate that Petitioner was also able to do alternate work and that such alternate work existed in significant numbers in the national economy.  In short, the ALJ concluded that Petitioner is not disabled as defined by the Social Security Act.  *Id*.

**B.     Analysis**

Petitioner challenges the ALJ's denial of disability benefits in two separate respects. First, Petitioner argues that the ALJ improperly rejected the opinions of Petitioner's treating physicians and other medical providers.  Pet.'s Brief in Supp. of Pet. for Review, p. 5 (Docket No. 15).  Second, Petitioner argues that the ALJ did not provide clear and convincing evidence for rejecting her own testimony.  *Id*.

1.     The Opinions of Petitioner's Medical Providers

The ALJ rejected the medical opinions suggesting that Petitioner maintained a covered disability even though those opinions originated from Petitioner's treating physicians.  The ALJ relied instead on the objective medical evidence of record, the State agency's review, and the opinions of the independent medical expert, Kristy Farnsworth, and independent vocational expert, Richard G. Taylor.

The Ninth Circuit has held that a treating physician's medical opinion is entitled to special consideration and weight.  *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989).  The treating physician's opinion is given that deference because "he is employed to cure and has a greater opportunity to know and observe the individual."  *Id*.  However, a "treating physician's opinion

**MEMORANDUM DECISION AND ORDER - 7**

on the ultimate issue of disability is not necessarily conclusive." *Id*. at 762 (citations omitted). The treating physician's opinion may be disregarded by the ALJ if he sets forth "specific, legitimate, reasons for doing so," as long as the decision is based on "substantial evidence," and the reasons for rejecting an uncontradicted physician's opinions are "clear and convincing." *Id*. (citations omitted).  A lack of objective medical findings, treatment notes, and rationale to support a treating physician's opinion is a sufficient reason for rejecting that opinion. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

> a.  *Richard Maynard, M.D.*

Petitioner argues that she has fibromyalgia and "[f]or the ALJ to conclude otherwise is reversible error."  Pet.'s Brief in Supp. of Pet. for Review, p. 14 (Docket No. 15).  However, the ALJ did not conclude that Petitioner did not have fibromyalgia; indeed, the ALJ specifically referenced the findings of Vermon S. Esplin, M.D. and Mary Himmler, M.D. in stating that fibromyalgia is one of Petitioner's four severe impairments.  (AR 15-16).

Yet, the ALJ subsequently found that Petitioner's impairments did not render her disabled under the Social Security Act.  (AR 16-19).  In light of Richard Maynard, M.D.'s "Fibromyalgia Residual Functional Capacity Questionnaire," this latter conclusion appears to be the thrust of Petitioner's objection to the ALJ's findings.  Pet.'s Brief in Supp. of Pet. for Review, p. 15 (Docket No. 15); *see also* (AR 187-190).

In February 2006, Dr. Maynard opined that Petitioner retained the residual functional capacity to walk for half a block and sit or stand for ten minutes (for less than two hours in an eight-hour work day), but required a sit/stand option, needed to lie down for four hours each day, and could rarely lift ten pounds or move her neck.  (AR 189-190).  Still, the ALJ found that Dr.

**MEMORANDUM DECISION AND ORDER - 8**

Maynard's impairment assessment related to Petitioner's fibromyalgia diagnosis is inconsistent

with the objective medical evidence.  In particular, the ALJ questioned Dr. Maynard's ability to

objectively assess Petitioner's residual functional capacity in light of the fact that "there was no

mention of chronic pain or fibromyalgia" in his preceding treatment notes.  (AR 18).[1]  A treating

physician's opinion may be disregarded if it is "brief and conclusionary in form with little in the

way of clinical findings to support [its] conclusion."  *Magallanes v. Bowen*, 881 F.2d 747, 751

(9th Cir. 1989) (quoting *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986) (internal quotation

marks omitted)).

But more importantly, Leslie Arnold, M.D.'s September 13, 2004 conclusions as to

Petitioner's residual functional capacity is at odds with Dr. Maynard's assessment.  (AR 148-

155).  In particular, Dr. Arnold concluded in no uncertain terms that Petitioner's condition, while

limited by pain, "does not preclude all work."  (AR 153).  Moreover, in contrast to Dr.

Maynard's opinions, Dr. Arnold found that Petitioner could frequently lift ten pounds; could

stand or walk at least two hours in an eight-hour workday; could sit about six hours in an eight-

hour workday; could perform unlimited push/pull activities consistent with the lift/carry

limitations; could occasionally climb, balance, stoop, kneel, crouch, and crawl; and did not have

any manipulative, visual, communicative, or environmental limitations.  (AR 149-152).  Notably,

Dr. Arnold's conclusions were subsequently affirmed by Dr. Ed Yurchak, M.D. on October 1,

---

[1] Although Petitioner does not challenge this rationale, evidence in the record does
indicate that Dr. Maynard visited with Petitioner for, among other things, fibromyalgia on March
21, 2005 and September 27, 2005.  (AR 159-160).  However, compared to the more voluminous
records relating to routine wellness examinations and mammograms, coupled with the absence of
any records from Dr. Maynard relating to debilitating pain associated with Petitioner's diagnosed
fibromyalgia, these limited records do not render the ALJ's decision erroneous.

**MEMORANDUM DECISION AND ORDER - 9**

2004 (AR 157-158) and later by Dr. Thomas T. Coolidge, M.D. on January 13, 2005 (AR 156).[2]

Petitioner does not respond to these findings.[3]

Thus, Petitioner incorrectly states that the ALJ's findings "are not supported by substantial evidence," "are supported by no evidence whatsoever," and are "pull[ed] out of thin air." Pet.'s Brief in Supp. of Pet. for Review, p. 15 (Docket No. 15). Simply put, Dr. Maynard's conclusions, even if credible, are not uncontradicted. The record therefore supplies substantial evidence of the legitimate reasons supporting the ALJ's decision in this respect which the Court is not in a position to interfere.

       *b.*    *Chris Bachman, M.D.*

At Exhibit 13F, Dr. Bachman's November 29, 2001 Radiology Report indicates that Petitioner suffers from osteitis pubis - a noninfectious inflammation of the pubis symphysis (the joint uniting the left and right pubic bones) causing varying degrees of lower abdominal and pelvic pain. (AR 191). The ALJ disagreed. (AR 18).

While Petitioner's pelvis and pubis x-ray showed degenerative changes of the sacroiliac joint, the ALJ concluded that it was otherwise "normal in appearance." *Id.* However, Dr. Bachman specifically noted that Petitioner's x-ray revealed "sclerosis at the symphysis pubis." (AR 191). Coincidentally, Respondent defines osteitis pubis as "sclerosis of the pubic bones, in

---

[2] While it is true that the ALJ found that Petitioner could occasionally lift or carry twenty pounds as compared to Dr. Arnold's ten pound assessment, it should be noted that Petitioner herself listed twenty pounds as the heaviest weight lifted while employed as a file clerk and/or receptionist leading up to her June 30, 2004 dismissal. (AR 98).

[3] Consistent with these findings, it should also be understood that Petitioner did not lose her job because of her pain; rather, she lost her job due to downsizing. (AR 69). This begs the rhetorical question: After fifteen years with the same employer, would Petitioner still be working if there was not a reduction in force at her workplace?

**MEMORANDUM DECISION AND ORDER - 10**

the region of the symphysis . . . ."  Resp.'s Brief, p. 7 n. 1 (Docket No. 16).  Therefore,

Respondent is incorrect to describe Exhibit 13F as "Dr. Bachman interpret[ing] her *normal*

pelvic/pubic x-ray as osteitis pubis."  *Id.* p. 7 (italics added).  Instead, it is clear that Petitioner's

x-ray was not normal – it showed signs of sclerosis of the pubic bones consistent with osteitis

pubis.  While the ALJ's discussion on the etiology of osteitis pubis raises some legitimate

questions when contrasted against Petitioner's level of historical activity (AR 18-19), it cannot

operate as justification for an outright dismissal of Dr. Bachman's uncontradicted impression

that Petitioner, in fact, suffered from osteitis pubis.[4]

     Still, even when assuming that Petitioner suffers from osteitis pubis, Petitioner must show

that such a condition, either by itself or in combination with other disabilities, meets the criteria

established for any of the qualifying impairments.  For the same reasons discussed above,

Petitioner has not met this burden.  *See supra*, pp. 7-10.  Substantial evidence exists in the record

to support the ALJ's specific and legitimate finding that Petitioner maintains the ability to

continue working in some capacity, consistent with available occupations in today's workforce,

including her previous employment.  In short, Petitioner's condition - even when considering the

ALJ may be incorrect as to the issue of whether she suffered from osteitis pubis - is not severe

enough to prevent her from working.  *Cf. Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)

(decision of ALJ will not be reversed for errors that are harmless (citing *Curry v. Sullivan*, 925

F.2d 1127, 1131 (9th Cir. 1991))).

---

    [4] As Petitioner correctly points out, the ALJ did not have a medical doctor available to
testify at the hearing to contradict Dr. Bachman's findings.  Pet.'s Brief in Supp. of Pet. for
Review, p. 15 (Docket No. 15).  The testimony of Kristy Farnsworth, Ph.D., is insufficient for
this purpose.  She is a psychologist, not someone with the ability to challenge Dr. Bachman's
opinions.

**MEMORANDUM DECISION AND ORDER - 11**

2.      The Opinions of Third-Parties

Petitioner next argues that the ALJ committed reversible error when he failed to consider the opinions of (1) occupational therapist, Janice Jean, (2) the chiropractic records of Dr. Henry West, and (3) the testimony of claimant's spouse, Dennis Armstrong.  Pet.'s Brief in Supp. of Pet. for Review, p. 16 (Docket No. 15).  Neither of these opinions affects the ALJ's decision.

a.      Janice Jean

Ms. Jean's records, while indeed indicating that Petitioner experiences pain, concurrently reflects periods where Petitioner is doing well.  (AR 161, 176, 182, 183 & 185).  Similarly, these records highlight on more than one occasion that Petitioner's condition is a reflection of a confluence of circumstances that may be independent of a disability covered by the Social Security Act.  (AR 179 ("We've addressed some key issues and I believe she is now ready to address all the issues involved . . . such as pain management, decreased activity, weight, job, and environment[al] considerations."  (AR 179 & 182)).  Regardless, Ms. Jean's July 2, 2004 entry (one week after Petitioner's termination), suggested that Petitioner's condition was actually improving with the help of aquatic exercises:

> She has been very reluctant to do aquatic exercises but I finally convinced her and we have had 3 sessions.  She has been doing really well and I feel like it would be of great benefit for her to continue to participate in aquatic exercises along with her HEP.

(AR 161).  However, Petitioner did not continue with her aquatic exercises.  *Id*.

Finally, as Respondent correctly points out, Ms. Jean does not provide any opinion regarding Petitioner's physical limitations.  Resp.'s Brief, p. 9 (Docket No. 16).  Thus, even when considering Ms. Jean's treatment notes and correspondence, the ALJ's decision to deny disability benefits to Petitioner remains supported by substantial evidence in the record and, as

**MEMORANDUM DECISION AND ORDER - 12**

required by controlling law, will not be second-guessed here, nor will the Court substitute its judgment when the evidence in the record can be applied to support the ALJ's findings..

    b.  *Dr. Henry West, D.C.*

 The record contains two exhibits relating to Dr. West and/or the West Chiropractic Clinic, P.A. - Exhibits 2F and 7F.  Like Ms. Jean's treatment notes, Exhibit 2F includes references not only to Petitioner's purported pain, but also the effectiveness of various treatments offered by Dr. West for two treatments in 1992, one treatment in 1994, and eleven treatments from June 16, 1998 through June 29, 1999 (AR 101-108).  Notably, these treatments took place five years before her alleged disability date.

 Exhibit 7F includes (1) an October 28, 2004 blood treatment note, identifying Petitioner's triglyceride and cholesterol levels (AR 135); (2) two treatment notes in 2003 identifying Petitioner's complaints; and (3) a single treatment note in June 2004 discussing Petitioner's blood chemistry tests.  (AR 137).

 In addition to failing to equivocally identify a covered disability, neither Exhibit 2F nor Exhibit 7F incorporates a physical assessment opinion authored by Dr. West.  Therefore, as with Ms. Jean's treatment notes, Dr. West's records do nothing to challenge the ALJ's ultimate decision to deny Petitioner disability benefits.  Consequently, again, the ALJ's findings will not be disturbed here.

    c.  *Dennis Armstrong*

 Mr. Armstrong, Petitioner's husband, offered testimony concerning Petitioner's condition. (AR 248-252).  Contrary to Petitioner's argument, the ALJ <u>did</u> consider Mr. Armstrong's testimony in reaching his decision.  (AR 17-18).  Still, as is permissible, the ALJ's consideration

**MEMORANDUM DECISION AND ORDER - 13**

of Mr. Armstrong's testimony was tempered against the objective medical evidence in the

record.  To be sure, at the close of the hearing (and also directly following Mr. Armstrong's

testimony), the ALJ clearly stated: "Okay.  Then we'll review the testimony in light of what the

medical records say in the file and you should get a decision."  (AR 252).  This approach is

consistent with *Bayliss v. Barnhart*, where the Ninth Circuit reasoned:

> An ALJ need only give germane reasons for discrediting the
> testimony of lay witnesses.  Inconsistency with medical evidence is
> one such reason.  The ALJ accepted the testimony of Bayliss's family
> and friends that was consistent with the record of Bayliss's activities
> and the objective evidence in the record; he rejected portions of their
> testimony that did not meet this standard.  The ALJ's rejection of
> certain testimony is supported by substantial evidence and was not
> error.

*Bayliss*, 427 F.3d 1211, 1218 (9th Cir. 2005)

Therefore, there is no basis to claim that the ALJ either ignored or improperly disregarded

Mr. Armstrong's testimony.  While Mr. Armstrong's testimony may not have been given the

weight Petitioner would have preferred, the testimony was not given independent of the

surrounding medical record.  Under these circumstances, because the evidence can reasonably

support the ALJ's conclusion, this Court will not substitute its judgment for that of the ALJ's.

*See Richardson*, 402 U.S. at 401; *Matney*, 981 F.2d at 1019.

   3.  <u>Petitioner's Testimony</u>

Petitioner next takes issue with the ALJ's conclusion that her statements regarding the

intensity, duration, and limiting effects of her symptoms are "not entirely credible."  Pet.'s Brief

in Supp. of Pet. for Review, pp. 16-17 (Docket No. 15).  While the ALJ is responsible for

determining Petitioner's credibility, he cannot reject her testimony without giving clear and

convincing reasons.  *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (citing *Reddick*

**MEMORANDUM DECISION AND ORDER - 14**

*v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).  Here, the ALJ provided sufficient reasons for calling into question Petitioner's credibility.

First, in early April 2004, Dr. Esplin recommended that nerve conduction studies be performed in response to Petitioner's description of her symptoms.  (AR 124).  However, the April 12, 2004 nerve compression study was "unremarkable."  *Id*.  Moreover, during her May 20, 2004 visit with Dr. Esplin, Petitioner apparently conceded that "occupational therapy has been helpful for her" and that the severity of her pain has reduced from an 8-9 out of 10 in April 2004 to a 4 or 5 out of 10 in late May 2004 - one month before being laid off.  *Id*.  The benefits of Petitioner's occupational therapy sessions were echoed in late June 2004 - immediately after being laid off.  (AR 163).  The ALJ appropriately incorporated these realities when he questioned Petitioner's credibility.  (AR 18).

Second, consistent with the above-reference nerve compression studies, a March 15, 1997 MRI did not reveal anything other than a "normal lumbar MRI."  (AR 100).  At that time, Petitioner presented with a history of back and groin pain.  *Id*.  Still, the objective medical evidence suggested otherwise; that is, that Petitioner's objective condition did not reflect her subjective complaints.  Again, the ALJ appropriately took this evidence into account when considering Petitioner's credibility.  (AR 18).

Third, and perhaps most important, the ALJ recognized that Petitioner "did not lose her job because of her pain, but because of downsizing" and thus "it is difficult to say that her impairments were so significant as to prevent her from doing some forms of substantial gainful activity."  (AR 19).  Petitioner's claim of debilitating pain beginning coincidentally on the same day she was laid off fails to take into account the fact that she was able to work and perform her

**MEMORANDUM DECISION AND ORDER - 15**

duties as a receptionist immediately prior to her claimed disability date.  If Petitioner's testimony

in this regard is to be believed, it is difficult to understand how she was physically capable of

working for Pocatello Dental Group for the fifteen years leading up to the time of her dismissal.

Because Petitioner was not let go from her work due to her pain, the ALJ was not incorrect to

consider this as a factor in questioning Petitioner's credibility.

These reasons combine to offer clear and convincing explanations as to why the ALJ did

not find Petitioner entirely credible when discussing the intensity, duration, and limiting effects

of her claimed symptoms.[5]

4.      Petitioner's Ability to Perform Past Relevant Work

Petitioner argues that she is incapable of performing her past relevant work and, therefore,

a finding of disability must be made.  Pet.'s Brief in Supp. of Pet. for Review, p. 17 (Docket No.

15).  More to the point, Petitioner claims that the ALJ's failure to consider the Grid Rule 201.06

is reversible error.  Id.  The ALJ, however, did not need to consult the Grid Rule if it was

determined that Petitioner is capable of performing her past relevant work.  Indeed, Petitioner's

counsel appeared to be in agreement with this assumption.  (AR 246).  Because the ALJ found

Petitioner capable of performing her past relevant work, he did not reference the Grid Rule.

_____

[5] Petitioner's argument that her reported symptoms were consistently relayed to her medical providers is not directly on point.  See Pet.'s Brief in Supp. of Pet. for Review, p. 17 (Docket No. 15).  The ALJ did not dispute that Petitioner exhibited symptoms consistent with a fibromyalgia diagnosis; presumably this is the reason why the ALJ referenced Dr. Esplin and Dr. Himmler when he identified fibromyalgia as one of Petitioner's impairments.  Instead the ALJ questioned the extent to which this impairment affected her ability to perform substantial gainful activity.  Of the providers listed by Petitioner as being ignored by the ALJ, only Dr. Maynard offered a functional limitation assessment arising from Petitioner's fibromyalgia.  For the reasons previously discussed (see supra, pp. 8-10), Dr. Maynard's assessment is not convincing.

**MEMORANDUM DECISION AND ORDER - 16**

Therefore, Petitioner's main argument in this respect appears premised upon the ALJ's conclusion that Petitioner was generally able to perform her past relevant work.

With the assistance of a hypothetical question posed to the vocational expert, Richard Taylor, the ALJ concluded that Petitioner was capable of performing light exertional work, comparing favorably to Petitioner's employment history as a teacher's aide, file clerk, and/or receptionist. (AR 19). This hypothetical was premised on the assumption that Petitioner could occasionally lift twenty pounds and frequently lift ten pounds. (AR 236-237). While neither Dr. Maynard nor Dr. Arnold opined that Petitioner could occasionally lift twenty pounds, the ALJ accepted Petitioner's statement that she lifted twenty pounds on occasion in her file clerk and/or receptionist job. (AR 98)

Considering this information, along with Petitioner's limitations, Mr. Taylor concluded at the hearing that Petitioner was capable of performing both light and sedentary work, including Petitioner's prior occupations. (AR 236-237). Although it is understandable that Petitioner disagrees with the foundation to the hypothetical and, accordingly, Mr. Taylor's conclusions, substantial evidence nonetheless exists to support the ALJ's finding that Petitioner is capable of performing her past relevant work.

## IV.

## CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility. *Allen*, 749 F.2d at 579; *Vincent ex. rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642. If the evidence is susceptible to more than one rational

**MEMORANDUM DECISION AND ORDER - 17**

interpretation, one of which is the ALJ's, the Court may not substitute its interpretation for that of the ALJ.  *Key*, 754 F.2d at 1549.

The Court is of the opinion that the evidence upon which the ALJ relied can reasonably and rationally support the ALJ's conclusions, despite the fact that such evidence may be susceptible to a different interpretation.  In fact, this Court, had it been the finder of fact, may well have reached a different conclusion, but that is not this Court's function.

Accordingly, the ALJ's decisions to find Petitioner's allegations and claims of disability to be not credible and to reject the opinions of Petitioner's treating physicians were based on proper legal standards and supported by substantial evidence.  Therefore, the Court concludes that the Commissioner's determination that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards.

The Commissioner's decision is affirmed.

## VII.

## ORDER

Based on the foregoing, the decision of the Commissioner is AFFIRMED and this action is DISMISSED in its entirety with prejudice.

DATED:  **January 30, 2008**.



Honorable Larry M. Boyle
United States District Court

**MEMORANDUM DECISION AND ORDER - 18**